**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, CHARLESTON WATERKEEPER, AMERICAN RIVERS, CHATTAHOOCHEE RIVERKEEPER, CLEAN WATER ACTION, DEFENDERS OF WILDLIFE, FRIENDS OF THE RAPPAHANNOCK, NORTH CAROLINA COASTAL FEDERATION, and NORTH CAROLINA WILDLIFE FEDERATION, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-330-DCN |
| v. | ) ) | |
| E. SCOTT PRUITT, in his official capacity as Administrator of the U.S. Environmental Protection Agency; the U.S. ENVIRONMENTAL PROTECTION AGENCY; R.D. JAMES, in his official capacity as Assistant Secretary of the Army for Civil Works; and the U.S ARMY CORPS OF ENGINEERS, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**SOUTH CAROLINA COASTAL CONSERVATION LEAGUE ET AL.'S
OPPOSITION TO THE PROPOSED BUSINESS INTERVENORS'
MOTION TO INTERVENE**

# TABLE OF CONTENTS

SUMMARY .................................................................................................................... 1

BACKGROUND ............................................................................................................ 3

ARGUMENT ................................................................................................................. 7

    I.   The Proposed Intervenors Are Not Entitled to Intervention of Right under Federal
        Rule of Civil Procedure 24(a) ........................................................................... 7

        A.  The Proposed Intervenors Have Failed to Demonstrate a Significantly Protectable
             Interest in the Subject of this Action ....................................................... 8

        B.  The Proposed Intervenors Have Failed to Demonstrate that the Disposition of this
             Action Would Impair Their Ability to Protect Their Asserted Interests ................... 11

        C.  The Proposed Intervenors Have Failed to Make the Required "Strong Showing" of
             Inadequate Representation ......................................................................... 12

    II.  The Proposed Intervenors Should Not Be Granted Permissive Intervention under
        Federal Rule of Civil Procedure 24(b) ........................................................... 18

    III. The Plaintiff Organizations Have No Objection to the Proposed Intervenors'
        Participation as Amici Curiae ........................................................................ 20

CONCLUSION ............................................................................................................. 21

## SUMMARY

This case challenges the federal defendants' hasty action in February 2018 to suspend Clean Water Act protections for wetlands and streams including heightened protections for Carolina Bays and pocosins—two vital wetland types concentrated in the Southeastern United States and found in this District. <u>See</u> Final Rule, Definition of "Waters of the U.S."—Addition of an Applicability Date to 2015 Clean Water Rule, 83 Fed. Reg. 5,200 (Feb. 6, 2018); Compl. ¶¶ 22-23, 50 (Dkt. No. 1); 33 C.F.R. § 328.3(a)(7)(ii)-(iii). The defendants' suspension of those protections was arbitrary and unlawful on its face because the agencies suppressed public comment and failed to consider the actual import and significance of their actions, in clear violation of the Administrative Procedure Act. <u>See</u> Compl. ¶¶ 68-81.

Though the plaintiff organizations would not have objected to intervention by groups with an underrepresented stake in *this* litigation, the basis for the present motion is the proposed intervenors' stake in *another* case. Because the proposed intervenors have failed to meet the requirements of Federal Rule of Civil Procedure 24 and would needlessly delay the resolution of this case if allowed to participate as parties, the motion to intervene should be denied.

The present case concerns the agencies' 2018 Suspension Rule. The pending motion to intervene, by contrast, is focused on the 2015 Clean Water Rule, which the proposed intervenors are challenging in the Southern District of Texas, and which other parties are challenging in other district courts across the country. <u>See</u> Opp'n to Transfer at 21 n.5 (Dkt. No. 19) (listing cases). The motion to intervene asks this Court to disregard the distinction between the 2018 and 2015 rulemakings based on an illusory claim that the issues here would have a "direct bearing" on the legally distinct issues raised in the Southern District of Texas. <u>See</u> Mot. to Intervene at 2 (Dkt. No. 16). Indeed, the groups seek to intervene as defendants not to defend the Suspension

Rule, but to launch their own attempt at transferring the plaintiffs and this case to Galveston, Texas. Id. at 3 n.2 (noting that the proposed intervenors have filed "a proposed motion to transfer this case to the Southern District of Texas" in lieu of the "pleading" required under Federal Rule of Civil Procedure 24(c)).

The proposed intervenors' motion does not meet the standard for intervention of right. The 2018 agency rulemaking challenged in this Court is a different action undertaken by different officials on different grounds years apart from the rule challenged in the Southern District of Texas and elsewhere. As a result, there is no actual risk of "inconsistent judgments." See Opp'n to Transfer at 3-4, 17-20. The proposed intervenors have accordingly failed to demonstrate the "interest" and "impairment" required for intervention under Federal Rule of Civil Procedure 24(a). See Mot. to Intervene at 10-12. Moreover, given that the defendant agencies are aggressively pursuing the "same ultimate objective" as the proposed intervenors, the groups have failed to "mount … [the] strong showing of inadequacy" demanded by the Fourth Circuit in Stuart v. Huff, 706 F.3d 345, 352 (4th Cir. 2013)—a decision omitted from the groups' motion to intervene. See Mot. to Intervene at 12-14.

The proposed intervenors' request for permissive intervention should also be rejected. As the proposed intervenors have argued that they satisfy the requirements of Rule 24(b) "for the same reasons that … make intervention proper as of right[,]" the same reasons counsel against permissive intervention. See id. at 14. In light of the proposed intervenors' planned—and duplicative—motion to transfer this case to the Southern District of Texas, it is also evident that their intervention would "unduly delay … [and] prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). That should not be allowed.

Because the proposed intervenors do not satisfy the standards for either permissive intervention or intervention of right, there is little reason to think that their involvement in this case would be of value to the Court. The plaintiff organizations, however, have no objection to their participation as amici. See, e.g., Ohio Valley Envtl. Coal., Inc. v. McCarthy, 313 F.R.D. 10, 32 (S.D.W. Va. 2015) (denying an industry motion to intervene in a Clean Water Act case, but granting amicus status under clearly defined terms).

## BACKGROUND

The plaintiffs adopt the background discussion set forth in their Opposition to Defendants' Motion to Transfer, Opp'n to Transfer at 5-12, with additional discussion below relevant to the convergence of interests between the proposed intervenors and the defendants.

EPA Administrator Scott Pruitt has acted as the lead and most public official in the current administration's efforts to repeal the 2015 Clean Water Rule. That rule clarified what resources are protected as "waters of the United States" under the Clean Water Act, based on an extensive scientific record, widespread public input, and a goal of fulfilling the Clean Water Act's objective to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Prior to the Clean Water Rule, the meaning of "waters of the United States" protected under the Act had proven a persistent source of confusion, and the agencies averred that the pre-existing regulatory guidance "did not provide the public or agency staff with the kind of information needed to ensure timely, consistent, and predictable jurisdictional determinations." See Final Rule, Clean Water Rule: Definition of "Waters of the U.S.," 80 Fed. Reg. 37,054, 37,056 (June 29, 2015).

The Clean Water Rule contained clear guidelines for what waters are and are not protected, for example categorically including or excluding waters based on distance in feet from

a traditional navigable water or location within a 100-year floodplain, and gave elevated

protections for Carolina Bays and pocosins, wetlands concentrated in the Carolinas.  See id. at

37,058-59.

When President-elect Trump announced in December 2016 that he would nominate Mr.

Pruitt, then the Attorney General of Oklahoma, to serve as the Administrator of the U.S.

Environmental Protection Agency, Pruitt had been waging an assault on the Clean Water Rule

for more than two years.  See Press Release (Dec. 8, 2016).[1]  Attorney General Pruitt called for

the abandonment of the proposed rule in 2014,[2] and subsequently testified before two

congressional committees objecting to the rule and stating that it should be withdrawn.[3]  Once

the rule was finalized, Mr. Pruitt—like the proposed intervenors in this case—filed suit to

invalidate it.  See State of Okla. ex rel. Pruitt v. EPA, No. 15-CV-0381-CVE-FHM, 2016 WL

3189807 (N.D. Okla. Feb. 24, 2016), rev'd and remanded sub nom; Chamber of Commerce of

the U.S. v. EPA, 709 F. App'x 526 (10th Cir. 2018).

On July 27, 2017, now-Administrator Pruitt proposed the immediate repeal of the Clean

Water Rule.  Proposed Rule, Definition of "Waters of the U.S."—Recodification of Pre-Existing

Rules, 82 Fed. Reg. 34,899 (July 27, 2017).  The proposed repeal, the agencies explained, would:

---

[1] Available at http://www.presidency.ucsb.edu/ws/index.php?pid=119781 (last visited Mar. 14, 2018), and https://perma.cc/24UR-CSKM (permanent link).

[2] Comments of the Att'ys Gen. of W. Va., et al., on the Proposed Definition of "Waters of the U.S." (Docket No. EPA-HQ-OW-2011-0880) (Oct. 8, 2014) available at https://www.regulations.gov/contentStreamer?documentId=EPA-HQ-OW-2011-0880-7988&attachment Number=1&contentType=pdf (last visited Mar. 14, 2018), and https://perma.cc/CDD2-RXTC (permanent link).

[3] Impacts of the Proposed "Waters of the U.S." Rule on State and Local Gov'ts: J. Hearing before the Comm. on Transp. and Infrast., U.S. H.R., and the Comm. on Env't and Pub. Works, U.S. Sen., 114th Cong. 70 (2015), available at https://www.gpo.gov/fdsys/pkg/CHRG-114jhrg93070/pdf/CHRG-114jhrg93070.pdf (last visited Mar. 14, 2018), and https://perma.cc/TES2-2U6Z (permanent link).

> rescind the 2015 Clean Water Rule and replace it with a recodification of the regulatory text that governed the legal regime prior to the 2015 Clean Water Rule[.]

Id. at 34,901-02.

Despite the significant implications of their plan to eliminate the Clean Water Rule, the EPA and the Corps insisted that members of the public withhold any comments on the merits of the proposed action.  Id. at 34,903.  According to the agencies, because they had no intention of "undertak[ing] any substantive reconsideration" of either the Clean Water Rule or their prior regulatory scheme, members of the public should refrain from submitting substantive comments on the "specific content" of either regulation.  Id.

After nevertheless receiving "more than 680,000 public comments" on the proposed repeal, Administrator Pruitt changed tack.[4]  On November 16, 2017, he signed a hastily devised proposal to instead "amend the effective date of the … Clean Water Rule"—"quickly" and retroactively—from August 28, 2015 to "two years from the date" of the proposal's finalization. News Release, EPA and the Army Propose to Amend the Effective Date of the 2015 Rule Defining "Waters of the U.S." (Nov. 16, 2017)[5]; Proposed Rule, Definition of "Waters of the U.S."—Amendment of Effective Date of 2015 Clean Water Rule (Nov. 16, 2017) (prepublication version), at 1 ("Effective-Date Proposal") (attached).

---

[4] Mem. for the Record, Rulemaking Process for Proposed Rule: Definition of "Waters of the U.S."—Addition of an Applicability Date to 2015 Clean Water Rule (Nov. 20, 2017) ("Rulemaking Mem."), at 4, available at https://www.regulations.gov/document?D=EPA-HQ-OW-2017-0644-0003 (last visited Mar. 14, 2018) and https://perma.cc/5CU7-SDCP (permanent link).

[5] Available at https://www.epa.gov/newsreleases/epa-and-army-propose-amend-effective-date-2015-rule-defining-waters-united-states (last visited Mar. 14, 2018), and https://perma.cc/LJ7S-QKR6 (permanent link).

When the agencies' new proposal appeared in the Federal Register on November 22, 2017—only six days later—it had been altered without explanation to "add an applicability date to the … Clean Water Rule" that would be "two years from the date of [the agencies'] final action[.]"  Proposed Rule, Definition of "Waters of the U.S."—Addition of an Applicability Date to 2015 Clean Water Rule, 82 Fed. Reg. 55,542 (Nov. 22, 2017).  According to the EPA and the Corps, "[t]he addition of … [an] applicability date to the 2015 Rule" would have the same effect as the repeal rule they had recently shelved,

> ensur[ing] that the regulatory definition of "waters of the United States" that existed prior to promulgation of the … [Clean Water Rule] in 2015 and that ha[d] been in effect nationwide since the 2015 Rule was stayed on October 9, 2015, would remain in effect during the ongoing actions undertaken in response to the Executive Order.

Id.  The agencies once again refused to solicit public comments on the merits of eliminating the Clean Water Rule, declaring that they "d[id] not intend to engage in substantive re-evaluation of the definition of 'waters of the United States' until the[ir] Step Two rulemaking"—until they decided, that is, to propose a permanent replacement to the Clean Water Rule.  Id. at 55,545. The agencies accordingly directed members of the public to withhold comment on "the specific content" of the Clean Water Rule and their prior regulatory scheme.  Id.  On February 6, 2018, approximately two months after proposing it, the defendant agencies finalized their Suspension Rule.  83 Fed. Reg. at 5,200, 5,203.

The plaintiffs filed suit on February 6, 2018, contending that the agencies' hasty actions violated the Administrative Procedure Act, 5 U.S.C. §§ 553, 706, which the Fourth Circuit has held to prevent an agency that seeks to suspend one rule and revive another from refusing to solicit public comments on the substance or merits of either regulation or to consider the

implications of the suspension.  N.C. Growers' Ass'n, Inc. v. United Farm Workers, 702 F.3d 755, 769-70 (4th Cir. 2012).

## ARGUMENT

The proposed intervention rests on a flawed premise—namely, that "the outcome of this litigation will have a direct and obvious impact on … [the proposed intervenors' Clean Water Rule] litigation in the Southern District of Texas, and particularly on their motion for a preliminary injunction pending before that court."  Mot. to Intervene at 9.  That is incorrect.  As explained below, the plaintiffs' procedural challenge to the 2018 Suspension Rule could not have a "direct" impact on the proposed intervenors' Clean Water Rule claims.  For that reason, and because the defendant agencies have proven more than zealous in their representation of the proposed intervenors' asserted interests, the motion to intervene should be denied.[6]

## I.    The Proposed Intervenors Are Not Entitled to Intervention of Right under Federal Rule of Civil Procedure 24(a)

Under Federal Rule of Civil Procedure 24(a), a district court "must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of …

---

[6] In their footnote on standing, the proposed intervenors appear to argue that they "need not show" it because the plaintiff organizations satisfy the requirements of Article III.  See Mot. to Intervene at 9 n.3 (declaring that "the proposed Business Intervenors need not show Article III standing" because "they do not wish 'to pursue relief not requested by a plaintiff'" (quoting Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S. Ct. 1645, 1648 (2017)).  While it is true that the plaintiffs have standing, this does nothing for the proposed intervenors, who seek to intervene as defendants.  See id. at 2; Town of Chester, 137 S. Ct. at 1651 (applying the "simple rule" that "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint" (emphasis added)).  "It is not clear whether a person who seeks to intervene as a defendant must show Article III standing" in this circuit.  Jones v. Chapman, No. CV ELH-14-2627, 2016 WL 6600511, at *4 n.9 (D. Md. Nov. 8, 2016) (emphasis in original).  In light of the Supreme Court's recent opinion in Town of Chester, however, it appears that any obligations the proposed intervenors might have under Article III would be satisfied by the federal defendants' participation in this suit.  See Town of Chester, 137 S. Ct. at 1651.

[a pending] action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). As the Fourth Circuit has summarized, intervention of right is accordingly "dependent on the moving party's fulfillment of three requirements: interest, impairment of interest and inadequate representation." Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir. 1989). The proposed intervenors' motion fails to satisfy each of these requirements.[7]

### A. The Proposed Intervenors Have Failed to Demonstrate a Significantly Protectable Interest in the Subject of this Action

The "subject of" this action is the unlawful rulemaking process that produced the Suspension Rule. See Fed. R. Civ. P. 24(a)(2). Rather than proclaiming an interest in that rulemaking, however, the proposed intervenors declare that "[t]he outcome of this litigation will almost certainly have an effect" on their pending Clean Water Rule challenge in the Southern District of Texas, "either by yielding a decision that bears on the issues involved in the [Texas] case or by further complicating the regulatory landscape." Mot. to Intervene at 10. The proposed intervenors accordingly attempt to claim "a 'significantly protectable' interest in the [plaintiffs'] challenge" to the Suspension Rule. Id. (quoting Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991) (internal quotations omitted)). This effort fails.

While the Fourth Circuit has recognized that intervention may be justified when the proposed intervenors "stand to gain or lose by the *direct legal operation* of the district court's judgment[,]" Teague, 931 F.2d at 261 (emphasis added), this is not such a case. The plaintiff groups have challenged the flawed 2017 and 2018 process that culminated in the promulgation of

---

[7] While Rule 24(a) also demands that motions to intervene be "timely[,]" the proposed intervenors have satisfied this requirement. See Fed. R. Civ. P. 24(a). As discussed below, however, their proposed motion to transfer the plaintiffs' action to Texas would cause undue delay. See Argument Section II, infra.

the Suspension Rule in February 2018.  See Compl. ¶¶ 68-85.  If the plaintiffs prevail, the

Suspension Rule would be declared unlawful and set aside.  See id.  No relief is sought, or would

be granted, concerning the merits of the various challenges pending in various district courts

across the country concerning the 2015 Clean Water Rule.  There is accordingly no chance this

action will "yield[] a decision that bears on the issues involved" in that litigation.  See Mot. to

Intervene at 3, 10.  In determining whether the 2018 rulemaking is unlawful, this Court will not

need to resolve, declare, or indicate—either implicitly or explicitly—that the 2015 rulemaking

was lawful, or that it was unlawful.  The proposed intervenors' reliance on decisions that

involved a significant risk of preclusion or conflicting orders is accordingly unavailing.  See,

e.g., Teague, 931 F.2d at 261 (cited in Mot. to Intervene at 10) (holding that the proposed

intervenors had an interest in an action "seeking a declaratory judgment" that the plaintiff

insurance company was "not liable … with regard to the [proposed intervenors' separate] class

action"); Feller v. Brock, 802 F.2d 722, 730 (4th Cir. 1986) (cited in Mot. to Intervene at 10)

(holding that an applicant for intervention had an interest in an action that was, "[a]t its heart, …

a collateral attack on" two prior cases in which the applicant was a party); Newport News

Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n, 646 F.2d 117, 120-21 (4th Cir.

1981) (cited in Mot. to Intervene at 10) (holding that the National Labor Relations Board had an

interest in a lawsuit that raised the "precise" issues the Board was considering in a separate

action, as "there existed a real possibility of inconsistent adjudications on those issues in the two

tribunals"); Anselmo v. W. Paces Hotel Grp., LLC, No. 9:09-cv-2466-MBS-BM, 2010 WL

11553312, at *1-2 (D.S.C. July 23, 2010) (cited in Mot. to Intervene at 10) (holding that the

proposed intervenor had "an interest sufficient to merit intervention" where she had been injured

by the very actions challenged in the suit).

Though the proposed intervenors have also declared that they "have a substantial economic interest in defending the … [Suspension] Rule[,]" Mot. to Intervene at 10-11, their motion fails to make "a single non-conclusory argument" in support of the assertion.  Linkous v. Am. Alternative Ins. Corp., No. 7:11-cv-278, 2011 WL 4894233, at *2 (W.D. Va. Oct. 13, 2011).  "This, without more, is not enough to warrant intervention as of right."  See id.; see also, e.g., Dumas v. SBC Glob. Servs., Inc., No. 1:07-cv-03583-JG, 2008 WL 4647711, at *2 (N.D. Ohio Oct. 20, 2008) (rejecting a motion for intervention of right where the "Would-be Intervenors [had] ma[de] a conclusory claim that they 'have an interest in this case[,]'" as such a "conclusory statement w[ould] not support a finding that the Would-be Intervenors ha[d] an interest"); cf. Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs, 528 F. Supp. 2d 625, 630 (S.D. W. Va. 2007) (noting that "[g]eneral averments and conclusory allegations are not enough" to establish "injury to recreational, aesthetic, and economic interests" for purposes of standing).

All told, the proposed intervenors have failed to demonstrate that they "stand to gain or lose by the direct legal operation" of this Court's judgment regarding the lawfulness of the Suspension Rule.  Teague, 931 F.2d at 261.  The Court should accordingly reject their motion to intervene.  See id.; see also, e.g., Md. Restorative Justice Initiative v. Hogan, 316 F.R.D. 106, 115 (D. Md. 2016) (holding that the proposed intervenors had "not demonstrated a 'significantly protectable' interest, as required for intervention of right[,]" where they would "not be deprived of any rights in th[e] case").[8]

---

[8] Citing the principle of "what's sauce for the goose is sauce for the gander[,]" the proposed intervenors also contend that their right to party status is demonstrated by the fact that two "other challengers to the … [Suspension] Rule"—the Natural Resources Defense Council and National Wildlife Federation—have intervened in the Texas litigation.  Mot. to Intervene at 2-3.  This argument ignores the fact that none of the plaintiff organizations in this case have intervened in

**B.      The Proposed Intervenors Have Failed to Demonstrate that the Disposition of this Action Would Impair Their Ability to Protect Their Asserted Interests**

The proposed intervenors get no further in arguing—in a single paragraph—that the disposition of this action in the absence of the groups would "impair their ability to protect their interests in the Texas litigation and in any other WOTUS-related lawsuits in which they might become involved."  Mot. to Transfer at 11-12; see also Fed. R. Civ. P. 24(a)(2) (requiring that an applicant for intervention of right be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest").

In attempting to demonstrate the requisite impairment, the proposed intervenors again contend that "the outcome of this litigation will have a substantial effect on other pending litigation to which the … [groups] are party, including … their motion for a preliminary injunction against the … [Clean Water] Rule … in the Southern District of Texas."  Mot. to Intervene at 12.  According to the proposed intervenors:

> [i]f this Court elects to vacate, stay, or enjoin the … [Suspension] Rule at the same time that the Southern District of Texas relies on the … [Suspension] Rule to deny preliminary injunctive relief against enforcement of the … [Clean Water] Rule, the proposed … [i]ntervenors and their members would be placed in a Catch-22.

Id.

There is no merit to this argument.  If the Suspension Rule were invalidated by this Court after serving as the basis for denying the proposed intervenors' requested injunction, the groups would be free to renew their request for preliminary relief.  See id. at 7 (noting that the proposed intervenors' Texas suit "was reopened" when it became clear that the Clean Water Rule would soon return to force).  This is not a "Catch-22."  Nor is it an "impairment" that could justify

---

the Texas litigation.  It also does nothing to remedy the many inadequacies of the proposed intervenors' motion to intervene.

granting the proposed intervenors' motion.  See, e.g., Francis v. Chamber of Commerce of the U.S., 481 F.2d 192, 195-96 (4th Cir. 1973) (holding that an applicant for intervention had "failed to meet the practical impairment requirement of Rule 24(a)" where it would "not be precluded from later pressing its interests in another suit"); Ohio Valley Envtl. Coal., 313 F.R.D. at 26 (noting that even "[t]he practical disadvantage of filing a separate suit and perhaps duplicating efforts is not sufficient to satisfy the impairment prong[,]" which requires a demonstration that the "disposition of the action would put the movant at a 'practical disadvantage' in protecting its interest, or … [that] the stare decisis effect of a judgment would legally preclude the would-be intervenor from protecting its interest later"); United States v. Exxonmobil Corp., 264 F.R.D. 242, 248 (N.D. W. Va. 2010) (cited in Mot. to Intervene at 11) (holding that the proposed intervenors had "met their burden of showing that, as a practical matter, the denial of their motions to intervene may impair their ability to protect their interests" where it would have "den[ied] them their sole timely opportunity to protect their interests").[9]

### C.    The Proposed Intervenors Have Failed to Make the Required "Strong Showing" of Inadequate Representation

In addressing the last of Rule 24(a)'s requirements for intervention of right—inadequate representation—the proposed intervenors contend that they need only meet a "'minimal'" burden.  Mot. to Intervene at 12.  According to their motion, because the EPA and the Corps "bear statutory obligations on behalf of the 'general public' as a whole[,]" the proposed intervenors "do not share the same interests" as the defendant agencies.  Id.  As a result, the

---

[9] In Ohio Valley Environmental Coalition v. McCarthy, the district court also noted that "the impairment prong is not met if the would-be intervenor could adequately protect its interests in the action by participating as amicus curiae."  313 F.R.D. at 26 (citing the Fourth Circuit's decision in McHenry v. Comm'r of Internal Revenue, 677 F.3d 214, 227 (4th Cir. 2012)).  As discussed below, the plaintiffs would have no objection to the proposed intervenors participating as amici in this case.

groups argue, the inadequacy requirement is satisfied by the mere possibility that they would

"'make a more vigorous presentation of the economic side of the argument'" than the defendant

agencies, or would choose to pursue an appeal the Solicitor General had deemed insufficiently

important "'to justify proceedings before the [appellate] court … or the Supreme Court.'"  Mot.

to Intervene at 12-14 (quoting N.Y. Pub. Interest Research Grp., Inc. v. Regents of the Univ. of

the State of N.Y., 516 F.2d 350, 352 (2d Cir. 1975), and Sierra Club, Inc. v. EPA, 358 F.3d 516,

518 (7th Cir. 2004)).  While these arguments might carry weight in other circuits, none of them

are correct here.

The question of adequacy in this case is governed by the Fourth Circuit's decision in

Stuart v. Huff, 706 F.3d at 345—a decision that goes unmentioned in the proposed intervenors'

motion.  See Mot. to Intervene at 1-15.  Stuart arose from a challenge to North Carolina's

"Woman's Right to Know Act," a "statute that require[d] certain informed consent procedures

prior to the performance of an abortion[.]"  706 F.3d at 347.  "Although the North Carolina

Attorney General actively sought to defend the statute," a coalition of "pro-life medical

professionals, women who ha[d] previously undergone abortions, and pregnancy counseling

centers" attempted to intervene as defendants in the action.  Id.  The district court denied the

applicants' motion, explaining "that because the existing defendant in th[e] case [wa]s a

government agency, a 'very strong showing of inadequacy' [wa]s needed to warrant

intervention."  Id. at 349.  The Fourth Circuit affirmed.  Id. at 347.

At the outset of its opinion, the Court of Appeals rejected the applicants' "contention that,

regardless of the fact that the existing defendants [we]re represented by a government agency,

the burden of 'showing inadequacy of representation' ought to be 'minimal,' in contrast to the

'very strong showing' required by the district court."  Id. at 350-51.  In the words of the Fourth

Circuit, "it is among the most elementary functions of a government to serve in a representative capacity on behalf of its people." Id. at 351.  As a result, the court concluded, where an applicant for intervention "share[s] the same ultimate objective as the existing defendants and where those defendants are represented by a government agency[,] … the putative intervenor must mount a strong showing of inadequacy." Id. at 352; see also, e.g., 7C Fed. Prac. & Proc. Civ. § 1909 (3d ed.) (noting that "if the absentee's interest is identical to that of one of the present parties, or if there is a party charged by law with representing the absentee's interest, then a compelling showing should be required to demonstrate why this representation is not adequate"—a principle that "control[s] … when a governmental body or officer is the named party").

To be sure, not every applicant seeking to intervene on the side of a government agency is required to make a "strong showing of inadequacy." Stuart, 706 F.3d at 352. As the Fourth Circuit explained in Stuart,

> where the existing party and proposed intervenor seek divergent objectives, there is less reason to presume that the party (government agency or otherwise) will adequately represent the intervenor.  In such circumstances, it is perfectly sensible to require a more modest showing of inadequacy before granting intervention of right since an existing party is not likely to adequately represent the interests of another with whom it is at cross purposes in the first instance.

Id.; see also, e.g., In re Sierra Club, 945 F.2d 776, 780 n.9 (4th Cir. 1991) (cited in Mot. to Intervene at 13) (concluding that "the district court abused its discretion in denying Sierra Club's motion to intervene as a matter of right" on the side of a state environmental agency where the Sierra Club and the agency "ha[d] already taken opposing positions" on an issue); Feller, 802 F.2d at 730 (cited in Mot. to Intervene at 13) (holding that the inadequacy requirement was satisfied where the defendant agency "ha[d] made clear its intention to argue against the … [regulatory] interpretation preferred by intervenors").

The proposed intervenors here have not argued that they would seek different objectives than the defendant agencies. See Mot. to Intervene at 12. Nor could they. While the groups have failed to provide the pleading required under Federal Rule of Civil Procedure 24(c), their motion admits that they would echo the EPA and the Corps' argument "that the challenges to the … [Suspension] Rule are meritless[.]" Id. Indeed, given the government's pending motion to transfer, it is clear that the defendant agencies even share the proposed intervenors' desire to make this argument in Texas. See Mot. to Intervene at 3 n.2. Because the proposed intervenors "share the same ultimate objective" as the EPA and the Corps—defending the lawfulness of the Suspension Rule—the groups "must mount a strong showing of inadequacy" to intervene. Stuart, 706 F.3d at 352 (holding that the proposed intervenors "share[d] the same ultimate objective as the existing defendants" where "[b]oth the government agency and the would-be intervenors want[ed] the [challenged] statute to be constitutionally sustained"); see also, e.g., Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec., No. CV ELH-16-1015, 2017 WL 2778820, at *11 (D. Md. June 26, 2017) (concluding that the proposed intervenors shared the same ultimate objective as the defendant agencies, which also sought "to uphold and defend the challenged regulations").

In attempting to demonstrate that the federal defendants will not "adequately represent" their asserted interests, Fed. R. Civ. P. 24(a)(2), the proposed intervenors first argue that their interests are "'more narrow'" than those of the agencies, making it "'likel[y] that the [groups] w[ould] make a more vigorous presentation of the economic side of the argument than would the [agencies].'" Mot. to Intervene at 12-13 (quoting Forest Conservation Council v. U.S. Forest Serv., 66 F.3d 1489, 1499 (9th Cir. 1995), abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv., 630 F.3d 1173 (9th Cir. 2011), and N.Y. Pub. Interest Research Grp., 516 F.2d

at 352).  The Fourth Circuit, however, has explicitly rejected this argument.  In the words of

Stuart v. Huff:

> stronger, more specific interests do not adverse interests make—
> and they surely cannot be enough to establish inadequacy of
> representation since would-be intervenors will nearly always have
> intense desires that are more particular than the state's (or else why
> seek party status at all). Allowing such interests to rebut the
> presumption of adequacy would simply open the door to a
> complicating host of intervening parties with hardly a
> corresponding benefit.

706 F.3d at 353; see also, e.g., Ohio Valley Envtl. Coal., 313 F.R.D. at 29 (noting that "[t]he

mere allegation that a governmental party could argue less vigorously than members of the

regulated industry is at best an argument that the government *could* commit nonfeasance, which

is insufficient to rebut the presumption of adequate representation" (emphasis in original)).

The proposed intervenors do no better in arguing that inadequacy can be found in the

mere possibility that the defendant agencies will not "exhaust their appellate remedies in the

event of an unfavorable decision from this Court."  Mot. to Intervene at 13-14 (declaring that this

possibility "by itself is sufficient to satisfy the proposed Business Intervenors' obligation to show

inadequate representation").  To quote Stuart again, where the proposed intervenors "share the

same objective as the existing government defendants … , the relevant and settled rule is that

disagreement over how to approach the conduct of the litigation"—including the decision to

appeal—"is not enough to rebut the presumption of adequacy."  706 F.3d at 353, 354 (citing

Little Rock Sch. Dist. v. N. Little Rock Sch. Dist., 378 F.3d 774, 781 (8th Cir. 2004), and

Saldano v. Roach, 363 F.3d 545, 554 (5th Cir. 2004)).  If the defendant agencies "refused to

appeal from a defeat" in this case, moreover, the proposed intervenors "could then seek to

intervene"—a fact that undermines their supposed need to do so now.  Mass. Food Ass'n v.

Mass. Alcoholic Beverages Control Comm'n, 197 F.3d 560, 568 (1st Cir. 1999); see also, e.g.,

United Airlines, Inc. v. McDonald, 432 U.S. 385, 395-96 (1977) (confirming that federal courts may "permit[] post-judgment intervention for the purpose of appeal" when "the intervenor act[s] promptly after the entry of final judgment"); Newport News Shipbuilding & Drydock Co., 646 F.2d at 123, 123 n.9 (noting that the intervenor's interest would "be adequately served by allowing … [it] to have reviewed on appeal the district court's final judgment," which "present[ed] questions of law on which the … [intervenor's] position could not be significantly improved by participation as a party" in the district court); Black v. Cent. Motor Lines, Inc., 500 F.2d 407, 408 (4th Cir. 1974) (noting that post-judgment intervention had been granted in numerous cases "so that the intervenor could prosecute an appeal which an existing party had decided not to take").[10]

   In short, the proposed intervenors have offered no reason for questioning the adequacy of the government's representation in this case.  See Mot. to Intervene at 12-14. Even if they had, however, any doubts would be dispelled by the current administration's persistent and aggressive efforts to eliminate the Clean Water Rule.  See Background, supra.  Under the leadership of Administrator (and defendant) Scott Pruitt—who had previously led the State of Oklahoma's legal assault on the regulation, see State of Okla. ex rel. Pruitt, 2016 WL 3189807—the EPA and the Corps have now made three separate attempts at suspending or repealing the regulation.  See

---

[10] While there is no need for this Court to determine whether the defendant agencies are likely to forego an appeal in this case, the proposed intervenors are wrong in suggesting that the question is somehow answered by the agencies' failure "to petition the Supreme Court for a writ of certiorari" in National Association of Manufacturers v. Department of Defense, 138 S. Ct. at 617.  Mot. to Intervene at 13 (arguing that the agencies' conduct in the Manufacturers case offers an opportunity to taste the appellate-remedies "pudding").  As the Supreme Court noted in its opinion, the agencies agreed with the Sixth Circuit's determination that it had "original and exclusive jurisdiction … to review" the Clean Water Rule.  Id. at 627-34.  They accordingly had no reason—or basis—for seeking Supreme Court review.  See id.  Both the issues and the dynamic are different here.  If this Court invalidates the Suspension Rule, the agencies would have grounds for an appeal and the incentive to pursue it.

Suspension Rule, 83 Fed. Reg. at 5,200; Effective-Date Proposal; Proposed Repeal Rule, 82 Fed. Reg. at 34,899.  Indeed, the present case is a product of the federal defendants' unwillingness to let procedural requirements delay their suspension of the Clean Water Rule's protections.  See Suspension Rule, 83 Fed. Reg. at 5,205 (asserting that there was "an urgent need" to finalize the Suspension Rule in the wake of the Supreme Court's determination that the Sixth Circuit was without jurisdiction to stay the Clean Water Rule).  All of this "underscores" the fact that the defendants and the proposed intervenors are "motivated by the same underlying concerns" in this case.  See Stuart, 706 F.3d at 352.  In light of these circumstances, while the agencies and the proposed intervenors remain nominally opposed in the Southern District of Texas, see Mot. to Intervene at 9, it cannot be seriously argued that the federal defendants will not adequately represent the groups' asserted interests in *this* case.

Because the proposed intervenors have failed to make any of the showings required under Federal Rule of Civil Procedure 24(a), their motion for intervention of right should be denied.

## II.     The Proposed Intervenors Should Not Be Granted Permissive Intervention under Federal Rule of Civil Procedure 24(b)

Federal Rule of Civil Procedure 24(b) allows the district courts to permit intervention by "anyone … who … has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "Critically," as the Fourth Circuit has noted, "the rule also states that '[i]n exercising its discretion' to permit intervention, a district court 'must consider whether the intervention will unduly delay ... the adjudication.'"  Stuart, 706 F.3d at 355 (quoting Fed. R. Civ. P. 24(b)(3)).

In arguing that this Court should grant them "discretionary leave to intervene under Rule 24(b)[,]" the proposed intervenors attempt to rely on the "same reasons" they offered in support of intervention under Rule 24(a).  Mot. to Intervene at 14.  These reasons, as explained above,

lack merit.  The groups should accordingly be denied permissive intervention.  See, e.g., Ohio v. EPA, 313 F.R.D. 65, 71 (S.D. Ohio 2016) (concluding that "permissive intervention [wa]s not appropriate" in a challenge to the Clean Water Rule where "the proposed intervenors [we]re already adequately represented").

Even if there were good reasons for allowing the proposed intervenors to participate as parties in this case, it is also clear that their intervention would "unduly delay … [and] prejudice the adjudication of the original parties' rights."  See Fed. R. Civ. P. 24(b)(3).  In place of the "pleading" demanded by Rule 24(c), the proposed intervenors have provided the parties and this Court with a "proposed motion to transfer this case to the Southern District of Texas[.]"  See Mot to Intervene at 3 n.2; Fed. R. Civ. P. 24(c) (providing that a motion to intervene "must … be accompanied by a pleading that sets out the claim or defense for which intervention is sought"); see also Fed. R. Civ. P. 7(a) (omitting intervention motions from a list of the "[o]nly … pleadings … allowed").  Given that the defendant agencies have already filed a motion to transfer this case to the Southern District of Texas—one the groups are aware of, see Mot. to Intervene at 9—the proposed intervenors' post-intervention plans would only lead to delay.  As the existing defendants are "zealously pursuing" the proposed intervenors' ultimate objective, this "delay in adjudication of the merits" would come "without a corresponding benefit to existing litigants, the courts, or the process[.]"  Stuart, 706 F.3d at 355 (internal quotations omitted).  This Court should accordingly deny the groups' request for leave to intervene under Rule 24(b).  See, e.g., id.; Ohio Valley Envtl. Coal., 313 F.R.D. at 31 (denying a motion for permissive intervention where "adding … [the applicant] as a party would [have] complicate[d] for the existing parties other aspects of th[e] litigation, including motions practice[,]" and "require[d] additional court resources"); see also Mass. Food Ass'n, 197 F.3d at 568 (affirming

the denial of permissive intervention where "[t]he district court [had] reasonably concluded that

the … [defendant agency] was adequately representing the interests of everyone concerned to

defend the statute and that any variations of legal argument could adequately be presented in

amicus briefs").[11]

### III.    The Plaintiff Organizations Have No Objection to the Proposed Intervenors' Participation as Amici Curiae

In light of the proposed intervenors' inability to demonstrate that intervention would be

appropriate under Rule 24, there is little reason to think that their involvement in this case would

be of value to the Court.  Nonetheless, the plaintiff organizations would not object to the groups'

participation as amici under the terms adopted by the court in Ohio Valley Environmental

Coalition v. McCarthy.  See 313 F.R.D. at 32 (authorizing the applicant for intervention to "file a

memorandum as amicus curiae on any motion in th[e] case[,]" subject to the same deadlines and

page limits as "the party whose position the amicus memorandum supports"); see also Stuart,

706 F.3d at 355 (noting that "[t]he availability of … [amicus status] reinforce[d] … [the Court of

Appeals'] disinclination to drive district courts into multi-cornered lawsuits by indiscriminately

granting would-be intervenors party status and all the privileges pertaining thereto"); Ohio, 313

F.R.D. at 72 (concluding that "[p]ermitting the Farm Bureau and the Environmental Groups to

participate in the [Clean Water Rule] case as amici curiae offer[ed] those groups a venue to raise

---

[11] With respect to the proposed intervenors' decision to flout the "pleading" requirement of Rule 24(c), the Fourth Circuit has determined "that in very limited circumstances an intervenor can be excused for failing to abide by the letter of Rule 24."  Bridges v. Dep't of Md. State Police, 441 F.3d 197, 208 (4th Cir. 2006).  As the proposed intervenors' motion should be denied on other grounds, there is no need for this Court to determine whether such circumstances exist in this case.  But see Gabauer v. Woodcock, 425 F. Supp. 1, 3 (E.D. Mo. 1976), rev'd in part on other grounds, 594 F.2d 662 (8th Cir. 1979) (denying an application for intervention that had been submitted with a copy of a motion to dismiss, as "[a] motion to dismiss is not a pleading" and, "[t]herefore, Rule 24(c) ha[d] not been complied with").

any unique arguments that they develop, and … avert[ed] the complications and delay associated

with adding three additional parties to th[e] litigation"); Ohio Valley Envtl. Coal., 313 F.R.D. at

32 (noting that "[g]ranting amicus status and deciding to accept amicus briefs is within the

discretion of district courts, … and 'a court does not abuse its discretion in denying permissive

intervention when participation ... as an amicus satisfies the asserted need for intervention'").

## CONCLUSION

As the Fourth Circuit has emphasized, intervention of right is "dependent on the moving

party's fulfillment of three requirements: interest, impairment of interest and inadequate

representation." Gould, 883 F.2d at 284. Because the proposed intervenors have failed to

demonstrate any of these things, their motion for intervention of right under Rule 24(a) should be

denied. See Fed. R. Civ. P. 24(a)(2). And because their participation as parties would "unduly

delay or prejudice the adjudication of the original parties' rights[,]" the groups' request for

permissive intervention under Rule 24(b) should also be rejected. See Fed. R. Civ. P. 24(b)(3).

Respectfully submitted this 14th day of March, 2018.

s/ J. Blanding Holman IV
D.S.C. Bar No. 9805
bholman@selcsc.org
Southern Environmental Law Center
463 King Street, Suite B
Charleston, SC 29403
Telephone:  (843) 720-5270
Facsimile:  (843) 414-7039

<u>Frank S. Holleman III</u>
Bar No. 1911
fholleman@selcnc.org
<u>Geoffrey R. Gisler</u>
N.C. Bar No. 35304
Admitted *Pro Hac Vice*
ggisler@selcnc.org
Southern Environmental Law Center
601 West Rosemary Street, Suite 220
Chapel Hill, NC  27516-2356
Telephone:  (919) 967-1450
Facsimile:  (919) 929-9421

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 14, 2018, I filed and thereby caused the foregoing

document to be served via the CM/ECF system in the United States District Court for the District

of South Carolina on all parties registered for CM/ECF in the above-captioned matter.


/s/ J. Blanding Holman IV