IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, CHARLESTON WATERKEEPER, AMERICAN RIVERS, CHATTAHOOCHEE RIVERKEEPER, CLEAN WATER ACTION, DEFENDERS OF WILDLIFE, FRIENDS OF THE RAPPAHANNOCK, NORTH CAROLINA COASTAL FEDERATION, and NORTH CAROLINA WILDLIFE FEDERATION, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | No. 2-18-cv-330-DCN |
| v. | ) ) | |
| E. SCOTT PRUITT, as Administrator of the United States Environmental Protection Agency; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; R.D. JAMES, as Assistant Secretary of the Army for Civil Works; and UNITED STATES ARMY CORPS OF ENGINEERS, | ) ) ) ) ) ) ) ) ) ) | **ORDER** |
| Defendants, | ) ) ) | |
| AMERICAN FARM BUREAU FEDERATION, et al., | ) ) ) ) | |
| Intervenor-Defendants. | ) ) | |

This matter is before the court on a motion for summary judgment by a coalition of conservation groups consisting of the South Carolina Coastal Conservation League, Charleston Waterkeeper, American Rivers, Chattahoochee Riverkeeper, Clean Water Action, Defenders of Wildlife, Friends of the Rappahannock, North Carolina Coastal Federation, and the North Carolina Wildlife Federation (collectively, "environmental plaintiffs"), ECF No. 60, as well as a cross-motion for summary judgment by defendants

1

Scott Pruitt ("Pruitt"), the United States Environmental Protection Agency ("the EPA"), Ryan Fisher ("Fisher"), and the United States Army Corps of Engineers ("the Army Corps") (collectively "the government"), ECF No. 62. Intervenor-defendants American Farm Bureau Federation, American Forest & Paper Association, American Petroleum Institute, American Road and Transportation Builders Association, Leading Builders of America, Matagorda Farm Bureau, National Alliance of Forest Owners, National Association of Home Builders, National Association of Manufacturers, National Cattlemen's Beef Association, National Corn Growers Association, National Mining Association, National Pork Producers Council, National Stone, Sand and Gravel Association, Public Lands Council, Texas Farm Bureau, and U.S. Poultry & Egg Association's (collectively, "the business groups") have filed a response in support of the government's cross-motion. ECF No. 63. For the reasons set forth below, the court grants environmental plaintiffs' motion for summary judgment, denies the government's cross-motion for summary judgment, and enjoins the Suspension Rule nationwide.

## I. BACKGROUND

This case arises out of the promulgation of a rule ("the Suspension Rule") that suspends the 2015 Clean Water Rule ("the WOTUS rule") for two years. The Clean Water Act ("the Act") prohibits discharge of pollutants from a point source into "navigable waters" without a permit. 33 U.S.C. §§ 1311(a), 1342, 1344, 1362(12). The Act defines "navigable waters" as "waters of the United States, including the territorial seas" but does not define what constitutes "waters of the United States." In 1980, the Environmental Protection Agency ("the EPA"), and in 1982, the Army Corps of Engineers ("the Army Corps") (together, "the agencies"), issued a regulation that defined

the term "waters of the United States," (hereinafter, "the 1980s regulation"). Under the 1980s regulation, the term "waters of the United States" included interstate waters, such as interstate wetlands, "intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds," and wetlands adjacent to these waters. The 1980s regulation specifically excluded "waters that are themselves wetlands" as a "waters of the United States."

On August 28, 2015, the EPA and the Army Corps enacted the WOTUS rule to clarify what types of waters constitute a "waters of the United States" and are thus covered by the Act. The WOTUS rule replaced the 1980s regulation and includes seasonal streams, wetlands, and tributaries as a "water of the United States." Soon after its enactment, the WOTUS rule became embroiled in litigation, with cases being brought in district courts across the country, including the Southern District of Texas ("the Texas litigation"). The government petitioned the Judicial Panel on Multi-District Litigation to consolidate these district court actions, which the Panel denied in October 2015.

All of the challenges to the district court decisions regarding the WOTUS rule were consolidated in the Sixth Circuit. In February 2016, the Sixth Circuit ruled that it had original jurisdiction over challenges to the WOTUS rule and issued a nationwide stay of the rule. At the time that the Sixth Circuit issued its nationwide stay of the WOTUS rule, the District of North Dakota had issued a preliminary injunction against the WOTUS rule effective in thirteen states. As a result of this ruling by the Sixth Circuit, the pending district court cases were either stayed or administratively closed. On January 22, 2018, the United States Supreme Court ruled that the circuit courts did not have original jurisdiction to review the WOTUS rule, and that challenges must continue to be

filed in the district courts. The Sixth Circuit then vacated the nationwide stay of the WOTUS rule. The injunction against the WOTUS rule issued by the District of North Dakota stayed in place.

On February 28, 2017, President Donald Trump issued Executive Order 13778 entitled "Restoring the Rule of Law, Federalism, and Economic Growth by Reviewing the 'Waters of the United States' Rule," which directed Pruitt, the Administrator of the EPA, and Fischer, the Assistant Secretary of the Army for Civil Works, to "review the . . . [WOTUS rule] . . . for consistency with . . . [administration] policy . . . and publish for notice and comment a proposed rule rescinding or revising the rule, as appropriate and consistent with [the] law." On February 6, 2018, the Suspension Rule was published in the Federal Register. The effect of the Suspension Rule to delay the WOTUS rule until 2020, and in the interim period the controlling interpretation of "waters of the United States" was that prescribed by the 1980s regulation which had been in place prior to the WOTUS rule.

On the same day that the Suspension Rule went into effect, environmental plaintiffs filed suit against the manner in which the Suspension Rule was enacted. Environmental plaintiffs allege the following claims: (1) in promulgating the Suspension Rule, the EPA and Army Corps violated the Administrative Procedure Act ("APA") by taking action with inadequate public notice and comment as prescribed by the APA; (2) the government's failure to consider the substantive implications of suspending the WOTUS rule in enacting the Suspension Rule was arbitrary and capricious under the APA, which directs federal agencies to "examine the relevant data and articulate . . . satisfactory explanation[s] for . . . [their] action[s]"; and (3) the government's failure after

enacting the Suspension Rule to restore the 1980s regulation to the Federal Register violates the APA, which requires federal agencies to publish the language of any substantive regulation that they intend to have legal effect. Environmental plaintiffs ask the court to declare that the EPA and the Army Corps acted arbitrarily and unlawfully in promulgating the Suspension Rule, and to vacate the Suspension Rule.

This motion has been fully briefed and is now ripe for the court's review.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Any reasonable inferences are to be drawn in favor of the nonmoving party. See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a

scintilla of evidence.  See Anderson , 477 U.S. at 252; Stone, 105 F.3d at 191.  Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'"  Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)).  If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'"  Id. (quoting Anderson, 477 U.S. at 248).

### III.  DISCUSSION

Environmental plaintiffs make three main arguments that the Suspension Rule violates the APA: (1) that the agencies violated the APA by refusing to solicit public comment on the merits of suspending the WOTUS rule and replacing it with previous regulations and guidance; (2) that the agencies violated the APA in refusing to consider the substantive implications of suspending the WOTUS rule; (3) that the agencies violated the APA in failing to publish the regulatory text that they intend to implement.  The court addresses the first two grounds as one and agrees with environmental plaintiffs that the agencies' refusal to consider or receive public comments on the substance of the WOTUS Rule or the 1980s regulation did not provide a "meaningful opportunity for comment" as set forth in N. Carolina Growers' Ass'n, Inc. v. United Farm Workers, 702 F.3d 755 (4th Cir. 2012).[1]  Because this ground is sufficient to grant summary judgment

---

[1] All of the parties discuss in varying degrees the merits of the WOTUS rule. Environmental plaintiffs argue that the WOTUS rule better effectuates the purpose of the Act because "peer-reviewed science and practical experience" are clear that upstream waters such as the wetlands protected by the WOTUS rule "significantly affect the chemical, physical, and biological integrity of downstream waters."  ECF No. 60 at 27, citing WOTUS Rule, 80 Fed. Reg. at 37,055.  Business groups spend almost the entirety of their voluminous briefing arguing otherwise, and highlighting the flaws in the

6

for environmental plaintiffs, the court does not analyze environmental plaintiffs' third ground for relief.

### A. Refusal to Solicit and Consider Public Comment on Merits of WOTUS Rule or 1980s regulation

Environmental plaintiffs contend that in promulgating the Suspension Rule, the government violated the APA by refusing to solicit or consider any substantive comments on the change of regulatory definition to "waters of the United States" from the WOTUS Rule to the 1980s regulation. The court agrees.

Under 5 U.S.C. § 553, before promulgating a rule an agency must publish "[g]eneral notice of proposed rule making . . . in the Federal Register" and offer "an opportunity to participate in the rule making through submission of written data, views, or arguments." Case law also makes it clear that the notice is deemed defective if it does not "include sufficient detail on its content and basis in law and evidence to allow for meaningful and informed comment[.]" Am. Med. Ass'n v. Reno, 57 F.3d 1129, 1132 (D.C. Cir. 1995) (emphasis added). The court in Ohio Valley Envtl. Coal. v. U.S. Army Corps of Engineers, 674 F. Supp. 2d 783, 802 (S.D.W. Va. 2009) adopted the reasoning of Connecticut Light & Power Co. v. Nuclear Regulatory Comm'n, 673 F.2d 525 (D.C. Cir. 1982), where the D.C. Circuit held that "[t]he purpose of the comment period is to

---

WOTUS rule. The court reiterates that the issue currently before the court is not the merits of the WOTUS rule but the procedure by which the Suspension Rule was implemented. Many other courts are delving into the merits of the WOTUS rule—this court need not enter that fray. And indeed, it would violate the "case or controversy" requirement of Article III for it do so. See Deakins v. Monaghan, 484 U.S. 193, 199 (1988) ("Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants."). The court has been tasked with determining the answer to a discrete question—whether the agencies violated the APA in promulgating the Suspension Rule.

allow interested members of the public to communicate information, concerns, and criticism" and that "[i]n order to allow for useful criticism, it is especially important for the agency to identify and make available technical studies and data that it has employed in reaching the decisions to propose particular rules."

In N. Carolina Growers' Ass'n, Inc., the Fourth Circuit made clear that an agency's suspension of a set of regulations and reinstatement of another set of regulations qualifies as "rule making" under the APA, triggering notice and comment requirements. Having established that the suspension of a rule requires the same substantive requirements of notice and comment rule making as the promulgation of that rule, the court now turns to whether the notice and comment rule making that occurred here was sufficient under § 553 and whether it allowed for "meaningful" comment. The court finds that it was not and did not.

In N. Carolina Growers' Ass'n, the Fourth Circuit analyzed an almost factually indistinguishable rule making attempt. The Secretary of Labor proposed in March 2009 to suspend the current 2008 regulations governing the admission of foreign workers for temporary employment in the agriculture sector and temporarily reinstate a 1987 regulation generally seen as more favorable to U.S. agricultural workers. N. Carolina Growers' Ass'n, Inc., 702 F.3d at 760. In doing so, the Secretary allowed for a ten day notice and comment period and specified that the Department of Labor would only consider comments on the suspension itself as opposed to any comments on the substantive merits of either the 2008 regulations or the 1987 regulations. Id. at 770. Two months after the comment period closed, DOL issued a final rule that reinstated the 1987 regulations. Id. at 761. Agricultural employers brought suit against the 2009 Suspension

Rule. Id. at 762. The Fourth Circuit noted that the 1987 rule "ceased to have any effect" upon publication of the 2008 rule, so its "reinstatement would have put in place a set of regulations that were new and different 'formulations' from the 2008 regulations." Id. at 765. The Fourth Circuit held that the Department of Labor's refusal to consider the substance of either the 2008 regulation or the 1987 regulation violated the APA as the merits of those rules were "integral to the proposed agency action" of suspending one set of rules and reinstating an earlier set of rules. Id. at 769. The Fourth Circuit ultimately held that the "the record clearly demonstrates that the Department did not satisfy its notice and comment obligations" under the APA. Id. at 769. It upheld the district court's permanent enjoinment of the March 2009 suspension rule. Id.

The court confronts an eerily similar set of facts here. On November 16, 2017, the agencies published a proposed rule to "review and revise" the definition of "waters of the United States." ECF No. 1, Ex. 1 Proposed Suspension Rule. The proposed rule explains that the Suspension Rule amends the effective date of the WOTUS rule to two years from the date of final action of the Suspension Rule. Id. at 3. In relevant part, the proposed rule states that the agencies "solicit comment as to whether it is desirable and appropriate to amend the effective date of the [WOTUS rule]," and that the agencies are "proposing to establish an effective date of two years after a final rule and seek comment on whether the time period should be shorter or longer, and whether delaying the effective date contributes to regulatory certainty." Id. at 12. It goes on to state that the Suspension Rule "does not undertake any substantive reconsideration of the [1980s regulation]" and so the agencies are not "soliciting on the specific content of [the 1980s regulation]" or the "scope of the definition of "waters of the United States" that the

9

agencies should ultimately adopt." Id. at 12–13. The proposed rule goes on to acknowledge that the request for comment is on "such a narrow topic," and that a "short comment period is reasonable." Id. at 10. In a "memorandum for the record," the agencies explain the rule making process for the Suspension Rule. In that memorandum, the agencies explain that the Suspension Rule is considered "step 1" of the process to rescind the WOTUS rule and to recodify the 1980s regulation. ECF No. 60, Ex. 2, EPA Memorandum for the Record on Suspension Rule Rule making Process. The Suspension Rule would, according to this memorandum, "maintain the legal status quo and thereby provide clarity and certainty for regulated entities, the states and tribes, and the public." Id. This memorandum further explains that it will engage in "step 2" of rule making by developing a final rule in "no more than two years." Id.

As the Fourth Circuit made clear in N.C. Growers Association, when an agency refuses to consider comments on a rule's substance and merits in issuing a suspension rule that reinstates an earlier regulation, the content restriction is "so severe in scope" that "by preventing any discussion of the 'substance or merits' of either set of regulations" the opportunity for comment "cannot be said to have been a 'a meaningful opportunity." N.C. Growers' Ass'n, 702 F.3d at 770. Here, the Suspension Rule explicitly restricted public comments to "whether it [was] desirable and appropriate to add an applicability date" to the WOTUS rule and whether the two-year delay in implementing what would be an ultimately revised definition of the "waters of the United States" should be "shorter or longer." The text of the proposed rule and the EPA Memorandum for the Record on Suspension Rule Rulemaking Process make clear that the agencies did not solicit any comments on the merits of the WOTUS rule or the merits of the 1980s regulation before

issuing the Suspension Rule. The agencies refused to engage in a substantive reevaluation of the definition of the "waters of the United States" even though the legal effect of the Suspension Rule is that the definition of "waters of the United States" ceases to be the definition under the WOTUS rule and reverts to the definition under the 1980s regulation. The definition of "waters of the United States" is drastically different under these two regulations. Environmental plaintiffs point to a string of recent cases where the courts have set aside similarly hastily enacted rules:[2]

> Clean Air Council v. Pruitt, 862 F.3d 1, 9 (D.C. Cir. 2017) (vacating the EPA's attempt to temporarily stay a Clean Air Act regulation without "comply[ing] with the … APA …, including its requirements for notice and comment"); Open Communities All. v. Carson, 286 F. Supp. 3d 148, 152 (D.D.C. Dec. 23, 2017) (enjoining the defendant agency's attempt, "without notice and comment or particularized evidentiary findings, … [to] delay[] almost entirely by two years implementation of a rule" adopted by the previous administration); Pennsylvania v. Trump, 281 F. Supp. 3d 553, *1, *9–10 (E.D. Pa. Dec. 15, 2017) (enjoining two new "Interim Final Rules" based on the defendant agencies' attempt to "bypass notice and comment rule making"); Nat'l Venture Capital Ass'n v. Duke, 291 F. Supp. 3d 5, 8 (D.D.C. Dec. 1, 2017) (vacating the defendant agency's "decision to delay the implementation of an Obama-era immigration rule … without providing notice or soliciting comment from the public"); California v. U.S. Bureau

---

[2] To this litany of cases, the court adds two more from the last several months—Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin., 894 F.3d 95, 113 (2d Cir. 2018) and Children's Hosp. of the King's Daughters, Inc. v. Azar, --- F.3d ----, 2018 WL 3520399 (4th Cir. July 23, 2018). In Nat. Res. Def. Council, petitioners claimed that the National Highway Traffic Safety Administration ("NHTSA") violated the APA when it indefinitely delayed the effective date of a rule that would have increased penalties for violations of certain vehicle environmental standards. NRDC, 894 F.3d at 100. The Second Circuit held that the NHTSA violated the APA by "annou ncing the Suspension Rule without having first undertaken notice and comment rulemaking." In Children's Hosp. of the King's Daughters, Inc., the Fourth Circuit held that the Department of Health & Human Services ("HHS") violated the APA in changing the methodology by which HHS calculated financial assistance available to hospitals that served "a disproportionate number" of low-income patients without complying with the notice and comment rulemaking requirements of the APA. Children's Hosp. of the King's Daughters, Inc., 2018 WL 3520399, at *1 (4th Cir. July 23, 2018). As these cases make clear, this court is but the latest in a series to recently find that an agency's delay of a properly promulgated final rule circumvented the APA.

> of Land Mgmt., 277 F. Supp. 3d 1106, 1111, 1120 (N.D. Cal. Oct. 4, 2017) (holding that the defendant agency's attempt to postpone a regulation's compliance dates "after the rule's effective date had already passed … violated the APA's notice and comment requirements by effectively repealing the [r]ule without engaging in the process for obtaining comment from the public"); Becerra v. U.S. Dep't of the Interior, 276 F. Supp. 3d 953, 966 (N.D. Cal. Aug. 30, 2017) (holding that the defendant agency violated the APA in "fail[ing] to give the public an opportunity to weigh in with comments" before attempting to postpone a rule that had already taken effect).

ECF No. 60 at 2–3. The government argues that the Suspension Rule is distinguishable from these cases because in those cases the agency undertook a "delay, suspen[sion], or otherwise [change]" in regulations during reconsideration without engaging in notice and comment rule making, whereas here the agencies conducted notice and comment rule making. ECF No. 62 at 23. But it is the agencies' decision to promulgate the Suspension Rule without allowing the public to comment on the substance of either the WOTUS Rule or the 1980s regulation that renders the notice-and-comment rule making infirm under the APA. An illusory opportunity to comment is no opportunity at all.

In determining whether the opportunity for notice and comment was "meaningful," the court also finds persuasive the differences in rule making between the WOTUS rule and Suspension Rule. In North Carolina Growers' Ass'n, Inc., 702 F.3d at 770, the Fourth Circuit noted that "the APA has not prescribed a minimum number of days necessary to allow for adequate comment" but suggested that a 10-day comment period is rarely sufficient absent exigent circumstances. There, the Fourth Circuit considered the fact that the 11,000 comments that the agency received during the 2008 rule making compared to the 800 received during the abbreviated ten-day period of rule making for the 2009 rule in finding that the Department of Labor did not provide a "meaningful opportunity" to comment. Here, the WOTUS rule received over one million

public comments during a notice-and-comment period that was over 200 days, and the rule making process itself involved over four years of reviewing thousands of peer-reviewed scientific studies. WOTUS Rule, 80 Fed. Reg. 37, 054 (June 29, 2015). This stands in sharp contrast to the Suspension Rule, which received over 680,000 public comments in the few weeks that public comment was open and was promulgated in mere months in a process that involved instructing the public to withhold substantive comments and did not consider any scientific studies. ECF No. 60, Ex. 1, EPA Rule making Memo. While not determinative, the length of the rule making process is also a factor in the court's analysis.

The government contends that the Suspension Rule is just that—a suspension of the WOTUS rule. It is not, according to the government, a repeal or rescission of the WOTUS rule. The government's stated rationale for the Suspension Rule is also what the government attempts to use to distinguish this case from the Department of Labor regulation that was found to violate the APA in N.C. Growers Association—that the WOTUS rule has been ensnared in litigation and its suspension would reduce "uncertainly and confusion" in the regulated community from that litigation. ECF No. 19, Ex. 1 Suspension Rule. It is not uncommon for administrative rules to face judicial challenges by regulated entities. The court cases challenging an administrative rule does not mean that agencies may disregard the procedural requirements of the APA. The government has pointed to no language in N.C. Growers Association to indicate as much. The court finds that under N.C. Growers Association, the content restriction on the scope of public comments that the agencies levied during the rule making process for the Suspension Rule "cannot be said to have been 'a meaningful opportunity.'" N. Carolina

Growers' Ass'n, Inc., 702 F.3d at 770 (quoting Prometheus Radio Project v. F.C.C., 652 F.3d 431, 450 (3d Cir. 2011)).

"An agency's view . . . may change. . . . But an agency changing its course must supply a reasoned analysis." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 57 (1983). No such "reasoned analysis" was provided in the promulgation of the Suspension Rule. By refusing to allow public comment and consider the merits of the WOTUS rule and the 1980s regulation, the agencies did not allow a "meaningful opportunity" to comment. As such, the court finds that the agencies were arbitrary and capricious in promulgating the Suspension Rule. It vacates the Suspension Rule for this reason. To allow the type of administrative evasiveness that the agencies demonstrated in implementing the Suspension Rule would allow government to become "a matter of the whim and caprice of the bureaucracy." N.C. Growers' Ass'n, 702 F.3d at 772 (Wilkinson, J., concurring). Certainly, different administrations may implement different regulatory priorities, but the APA "requires that the pivot from one administration's priorities to those of the next be accomplished with at least some fidelity to law and legal process." Id. at 772. The agencies failed to promulgate the Suspension Rule with that required fidelity here. The court cannot countenance such a state of affairs.[3]

---

[3] Now, environmental plaintiffs made an additional argument that has less credence. Specifically, that the Suspension Rule is inconsistent with the purpose of the Act and so runs contrary to the requirement that an agency "show that . . . [a] new policy is permissible under the statute" under which the rule is promulgated. ECF No. 60 at 21, quoting F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009). The court is not convinced—the Suspension Rule restores the regulatory definition of "waters of the United States" to the 1980s regulation. From the 1980s until 2015, when the WOTUS rule was enacted, it was that definition of "waters of the United States" that the EPA operated under. Environmental plaintiffs have not alleged that the 1980s regulation was

## B. Geographic Scope of Injunction

Having determined that the agencies violated the APA in promulgating the Suspension Rule, the court must now determine the scope of the injunction. Environmental plaintiffs ask for a nationwide injunction, while the government and business groups urge the court to geographically limit the scope of the injunction. The court refuses to do so.

It is well-established that "district courts have broad discretion when fashioning injunctive relief." Ostergren v. Cuccinelli, 615 F.3d 263, 288 (4th Cir. 2010). They may issue nationwide injunctions consistent with the principle that the choice of relief "should be carefully addressed to the circumstances of the case and should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." Int'l Refugee Assistance Project v. Trump, 857 F.3d 554, 605 (4th Cir.), as amended (May 31, 2017), as amended (June 15, 2017), cert. granted, 137 S. Ct. 2080, (2017), and vacated and remanded on other grounds sub nom. Trump v. Int'l Refugee Assistance, 138 S. Ct. 353 (2017). "[T]he Constitution vests the District Court with 'the judicial power of the United States.' That power is not limited to the district wherein the court sits but extends across the country. It is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction." Texas v. United States, 809 F.3d 134, 188 (5th Cir. 2015) (quoting U.S. Const. Art. III, § 1). The Supreme Court has made clear that "the scope of injunctive relief is dictated by the extent of the violation

---

ever successfully attacked in its nearly 30-year history as impermissible under the Act or somehow inconsistent with the Act's objective of "restor[ing] and maintain[ing] the . . . integrity of the Nation's waters." 33 U.S.C. § 1251(a).

established, not by the geographical extent of the plaintiff class." Califano v. Yamasaki, 442 U.S. 682, 702 (1979).

The government argues that if the court chooses to enjoin the Suspension Rule, it should not issue a nationwide injunction. But the court sees no principled reason why the Suspension Rule should be enjoined in some states but not others. First, environmental plaintiffs are located throughout the United States. In Richmond Tenants Org., Inc. v. Kemp, 956 F.2d 1300, 1307 (4th Cir. 1992), the Fourth Circuit upheld a nationwide injunction where plaintiffs brought suit against the "Forfeiture Project," a federal program designed to remove drug offenders from public housing that did not grant potential evictees advance notice and an opportunity to be heard. The district court enjoined the Forfeiture Project nationwide, finding that the Due Process Clause of the Fifth Amendment "requires the government to provide for notice and an opportunity to be heard before a tenant may be evicted." Id. at 1307. Here too, the challenged conduct causes harm in multiple jurisdictions across the country.

Second, environmental plaintiffs have brought a facial challenge to agency action under the APA. In Harmon v. Thornburgh, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989), the D.C. Circuit reasoned that "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." See also Nat'l Min. Ass'n v. U.S. Army Corps of Engineers, 145 F.3d 1399, 1406 (D.C. Cir. 1998) (invalidating an agency rule and affirming the nationwide injunction); Texas v. United States, 2016 WL 7852330, at *3 (N.D. Tex. Nov. 20, 2016) ("A nationwide injunction is appropriate in this case because Plaintiffs have presented a strong facial challenge to the Guidelines, arguing they violate

the [APA] by skirting the notice and comment process and contradicting existing law."); Earth Island Inst. v. Ruthenbeck, 490 F.3d 687, 699 (9th Cir. 2007), (rev'd in part on other grounds), ("The nationwide injunction, as applied to our decision to affirm the district court's invalidation of 36 C.F.R. §§ 215.12(f) and 215.4(a), is compelled by the text of the Administrative Procedure Act . . .").

Finally, and perhaps most saliently, a nationwide injunction is "necessary to provide complete relief." Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 778 (1994); see also Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1501–02 (9th Cir. 1996) ("[A]n injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—if such breadth is necessary to give prevailing parties the relief to which they are entitled."). The Suspension Rule affects a vast array of wetlands across the United States, and environmental plaintiffs have provided affidavits that articulate the concerns of their members with how the Suspension Rule will affect downstream waters not just in South Carolina or even within the Fourth Circuit but throughout the United States. ECF No. 64, Exs. 4–6. For example, a member of plaintiff American Rivers "fishes in Montana, Wyoming, Colorado, New Mexico, South Carolina, North Carolina, Tennessee, New York, Vermont, Utah, California, and Washinton." ECF No. 60, Ex. 8, Bob Irvin Declaration. A member of plaintiff Clean Water Action "has kayaked in streams from Georgia to Pennsylvania, and regularly paddles in Maryland and Virginia." ECF No. 60, Ex. 16, Gary Steinburg Declaration. And so on. It is clear that the Suspension Rule's

effect is felt across the United States.  Accordingly, the court enjoins the Suspension Rule nationwide.[4]

### IV.   CONCLUSION

As administrations change, so do regulatory priorities.  But the requirements of the APA remain the same.  The court finds that the government failed to comply with these requirements in implementing the Suspension Rule.  Accordingly, the court **GRANTS** summary judgment for the environmental plaintiffs, **DENIES** the government's cross-motion for summary judgment, and **ENJOINS** the Suspension Rule nationwide.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 16, 2018**
**Charleston, South Carolina**

---

[4] Certainly, nationwide injunctions have the potential for abuse.  As the Seventh Circuit recently observed in City of Chicago v. Sessions, 888 F.3d 272, 288 (7th Cir. 2018):
> [U]nder the Obama administration, such injunctions stymied many of the President's policies, with five nationwide injunctions issued by Texas district courts in just over a year[.]  At that time, then-Senator and now-Attorney General Sessions characterized the upholding of one such nationwide preliminary injunction as "a victory for the American people and for the rule of law." Press Release, Sen. Jeff Sessions III, June 23, 2016. Now, many who advocated for broad injunctions in those Obama-era cases are opposing them.

This court agrees that nationwide injunctions should be utilized "only in rare circumstances."  Id.  This is one such set of rare circumstances.  Just because the political shoe is on the other foot does not mean that nationwide injunctions are no longer appropriate.  What is good for the goose is good for the gander.